IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER J. HOCTOR        :            CIVIL ACTION
                               :
       v.                  :
                               :
JO ANNE B. BARNHART,       :             NO. 05-1751
Commissioner of               :
Social Security Administration    :

## REPORT AND RECOMMENDATION

THOMAS J. RUETER                       December 20, 2005
United States Magistrate Judge

        Plaintiff, Christopher J. Hoctor, filed this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying his claims for disability insurance benefits ("DIB")

under Title II and supplemental security income ("SSI") under Title XVI of the Social Security

Act ("Act").

        Each party filed a motion for summary judgment.  For the reasons set forth below,

this court recommends that plaintiff's motion for summary judgment be GRANTED and the

Commissioner's motion for summary judgment be DENIED.

I.      **FACTUAL AND PROCEDURAL HISTORY**

        Plaintiff filed applications for DIB and SSI on November 12, 2003, alleging

disability since January 17, 2003 due to blood clots, depression and hearing loss.  (R. 70.)  The

claims were denied initially.[1]  (R. 24-25, 34-37, 164-68.)  At the request of plaintiff,

Administrative Law Judge ("ALJ") Jonathan L. Wesner made his decision based upon the

---

     [1]     Pursuant to the Commissioner's disability process redesign program, plaintiff was
permitted to seek review of the unfavorable initial determination by an ALJ without first seeking
reconsideration.  See R. 35.

evidence of record, without an oral hearing.  (R. 17.)  In a decision dated July 26, 2004, the ALJ

found that plaintiff was not disabled under the Act.  (R. 17-23.)  The ALJ made the following

findings:

1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant's deep venous thrombosis, depression and substance abuse are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The claimant has the following residual functional capacity: lift, carry, push and/or pull 10 pounds frequently and 20 pounds occasionally; stand and/or walk for 6 hours and sit for 6 hours (with normal breaks); understand, remember and carry out simple instructions; respond appropriately to supervision, coworkers and usual work situations; make simple decisions; and deal with changes in a routine work setting.  Thus, the claimant has the residual functional capacity for light work.

7.  The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8.  The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9.  The claimant has a "limited education" (20 CFR §§ 404.1564 and 416.964).

10.  Transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

2

11.     The claimant has the residual functional capacity to perform the full range of light work (20 CFR §§ 404.1567 and 416.967).

12.     Based on an exertional capacity for light work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.17.

13.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(R. 22-23.)

Plaintiff filed a request for review of the decision of the ALJ that was denied by the Appeals Council. (R. 6-9.) The ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum, 48 F.3d at 117. This court may not weigh evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993)). As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour

3

Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 423(d)(5). A claimant satisfies this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). Once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience the claimant has the ability to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f); 416.920(f).

The Commissioner decided this matter by utilizing the five step sequential evaluation process established by the Department of Health and Human Services to determine whether a person is "disabled." This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his

4

age, education, and work experience.  20 C.F.R. §§ 404.1520; 416.920.

III.    **BACKGROUND**

    A.    **Medical Evidence**

        The record contains evidence which predates the onset date of plaintiff's alleged disability.  Plaintiff was treated for a work-related injury he sustained on September 20, 2002 while transporting a patient from a wheelchair to a regular chair.  (R. 134.)  He was out of work for three days.  Id.  In December 2002, plaintiff was treated by David Ling, M.D., for a left shoulder strain.  Id.  During that visit, plaintiff complained of severe pain with movement and some weakness.  Plaintiff was prescribed Naprosyn and given a recommendation for physical therapy.  Id.

        On September 2, 2003, plaintiff was treated for an allergic reaction to a bee sting on the right side of his body.  Plaintiff was prescribed a Medrol-Dosepak and Zyrtec.  (R. 134.)  Physicians at Lancaster Regional Medical Center admitted plaintiff on September 19, 2003.  He was diagnosed with right leg deep venous thrombosis[2] ("DVT").  (R. 118.)  Ariz Hafiz, M.D., opined that plaintiff's DVT had no obvious cause, but noted that plaintiff had been stung by a bee on the same leg.  Plaintiff was treated with Lovenox and Coumadin; bed rest also was recommended.  Id.  Plaintiff indicated that he would be unable to self-administer the Lovenox.  His wife further indicated that plaintiff was "very active and will not stay bed resting at home."  Id.

_____

    [2]    Venous thrombosis, also known as phlebothrombosis, is defined as the presence of a clot in the vein, unassociated with inflammation of the wall of the vein.  Dorland's Medical Dictionary ("Dorland's") at 1423 (30th ed. 2003).  Plaintiff's diagnosis of DVT was confirmed by Doppler Ultrasound.  (R. 119.)

Dr. Ling examined plaintiff on October 17, 2003 during a follow-up visit for his DVT.  (R. 131.)  Dr. Ling indicated that plaintiff was still taking Coumadin.  While plaintiff denied significant pain, his leg remained swollen.  Plaintiff related that his job required him to stand and walk for the majority of the time.  Dr. Ling continued plaintiff on Coumadin and released him for work on October 22, 2003.  Id.

Plaintiff was treated by Dr. Ling on November 3, 2003.  (R. 132.)  Plaintiff indicated that he returned to work, but after three days his right leg "began to swell a great deal." Id.  There was no significant tenderness with palpation and Dr. Ling diagnosed DVT.  Plaintiff also complained of depression and was prescribed Paxil.  Id.  Dr. Ling reported that plaintiff was reluctant to return to work due to a flare up of his DVT which was precipitated by his return to work.  Dr. Ling indicated that plaintiff would "probably benefit from a reduced schedule such as four to six hours per day instead.  I am sure [sic] if his work could accommodate him."  Id.

Dr. Ling examined plaintiff on December 22, 2003 for his DVT.  (R. 172.) Plaintiff was still taking Coumadin with no apparent complications.  Id.  Dr. Ling reported that plaintiff was scheduled to discontinue his Coumadin at the end of the following week.  Id. During his visit with Dr. Ling, plaintiff reported decreased hearing on his right side.[3]  Id.  Dr. Ling examined plaintiff on January 14, 2004 after plaintiff complained of swelling in his right leg after a five hour drive.  (R. 173.)  Dr. Ling opined that plaintiff "probably ha[s] some degree of venous blockage secondary to some residual blood clot.  May have some venous insufficiency." Id.  The physician indicated that plaintiff was "clinically improving at present.  No strong

_____

[3]     Results of a hearing test conducted on January 16, 2004 revealed that plaintiff had profound hearing loss in his right ear and normal hearing in the left ear.  (R. 171.)

evidence of DVT at present." Id. Dr. Ling noted that plaintiff had been off his Coumadin for approximately three weeks without problems. Id. Plaintiff was admitted to Lancaster Regional Medical Center on March 20, 2004 with an admission diagnosis of "right leg DVT, questionable recurrent DVT." (R. 177.) An ultrasound confirmed DVT, but N. Anthony Mastropietro, M.D., the admitting physician, indicated that it was unclear whether this was a flare up of previous DVT or new DVT. Id. Accordingly, the physician reported that plaintiff's condition would be treated for one year. He was prescribed Coumadin and Lovenox. Id. Plaintiff had follow up visits with Dr. Ling on March 29, 2004, April 7, 2004 and April 21, 2004. (R. 176.) After these visits, Dr. Ling reiterated plaintiff's diagnosis of recurrent DVT of the right leg and instructed plaintiff to continue taking Coumadin. Id.

## IV.   DISCUSSION

Plaintiff was thirty-nine years old at the time of the ALJ's decision and is therefore considered a "younger person" under the Act. (R. 18.) See 20 C.F.R. §§ 404.1563, 416.963. He has past relevant work experience as a landscape laborer, stock person, warehouse laborer and resident counselor. (R. 54-61.) The ALJ found that the evidence of record supported a finding that plaintiff had DVT, depression and substance abuse, impairments that were severe within the meaning of the regulations, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R. 22.) Ultimately, the ALJ concluded that plaintiff, although unable to return to his past relevant work, was able to make an adjustment to work that exists in significant numbers in the national economy. (R. 23.)

In his brief in support of his motion for summary judgment, plaintiff argues that the ALJ "failed to evaluate the substantial weight of medical evidence." (Pl.'s Br. Supp. Summ.

7

J. at 5.)  Plaintiff contends that his DVT was disabling and the ALJ "gave short shrift to the records of Plaintiff's treating physician, Dr. Ling."[4]  Id.  Specifically, plaintiff avers that evidence in the record does not support the ALJ's finding that plaintiff was capable of performing light work.  Id.  Defendant maintains that substantial evidence supports the decision of the ALJ that plaintiff was not disabled.  (Def.'s Br. Supp. Summ. J. at 8-14.)

After a review of the record, this court concludes that substantial evidence does not support the ALJ's conclusion that plaintiff was able to perform light work.  As stated above, the ALJ found that plaintiff was incapable of returning to his previous work which involved standing for eight or more hours in a day.  (R. 21.)  However, the ALJ determined that plaintiff was capable of performing the full range of light work.  (R. 22.)

According to social security regulations, light work

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. §§ 404.1567(b), 416.967(b).  Moreover, an ALJ must determine a claimant's residual functional capacity ("RFC").  RFC is an assessment of an individual's ability to sustained work-related physical and mental activities on a "regular and continuing basis," - - i.e., eight hours per day, five days per week, or an equivalent work schedule.  See SSR 96-8p.  An ALJ's RFC assessment must be "accompanied by a clear and satisfactory explanation of the basis on which it rests."  Fargnoli v. Massanari, 247 F3d. 34, 41 (3d Cir. 2001).  This explanation "helps to avoid

---

[4]        Though he listed other impairments in his disability application, plaintiff focuses primarily on his DVT in his motion for summary judgment.  Thus, this court's discussion is limited to this impairment.

8

judicial usurpation of administrative functions."  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

      This court is troubled by several aspects of this case.  Plaintiff waived his right to an administrative hearing and the ALJ based his decision solely on the evidence of record.  The ALJ's decision was rendered without benefit of the testimony of plaintiff or a vocational expert.  The ALJ determined, by utilizing the grids, that plaintiff was capable of performing the full range of light work.  (R. 21.)  The ALJ concluded that plaintiff retained the following RFC:

> lift, carry, push and/or pull 10 pounds frequently and 20 pounds occasionally; stand and/or walk for 6 hours and sit for 6 hours (with normal breaks); understand, remember and carry out simple instructions; respond appropriately to supervision, coworkers and usual work situations; make simple decisions; and deal with changes in a routine work setting.  Thus, the claimant has the residual functional capacity for light work.

Id.  This court is unable to determine how the ALJ reached this conclusion based on the evidence before him.  The ALJ noted that a Physical Residual Functional Capacity Assessment completed by a state agency employee indicated that plaintiff could perform medium work.  (R. 81.)  The ALJ expressly rejected this opinion, however, finding that it was not rendered by an acceptable medical source.  (R. 21.)  The opinion of Dr. Ling, plaintiff's treating physician, does not appear to support the ALJ's RFC assessment.  Dr. Ling opined that plaintiff could work a reduced schedule of four to six hours at his prior employment.[5]  (R. 132.)  However, in accordance with the Commissioner's definition of light work, the assessment of Dr. Ling does not equate to an ability to perform a full range of light work.  See 20 C.F.R. §§ 404.1567(b), 416.967(b).  Although it is the ALJ's duty to assess RFC at step four of the sequential analysis, see 20 C.F.R.

---

     [5]    This court notes that there is scant information available about plaintiff's prior job since neither plaintiff nor a vocational expert testified at an administrative hearing.

§§ 404.1545(a), 416.945(a), it unclear to this court upon what evidence the ALJ relied in reaching his conclusion that plaintiff was capable of performing the full range of light work. Thus, this court concludes that the ALJ's RFC assessment was not "accompanied by a clear and satisfactory explanation of the basis on which it rests." Fargnoli, 247 F.3d at 34.  Therefore, this court recommends that this case be remanded for a more complete explanation of plaintiff's assessed RFC in accordance with the appropriate legal standards.  To the extent necessary, the Commissioner should seek clarification from plaintiff's treating sources regarding plaintiff's ability to perform work.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3), SSR 96-2p.

## V.    CONCLUSION

After a careful and thorough review of all of the evidence in the record, this court concludes that there is not substantial evidence to support the ALJ's decision denying plaintiff benefits.  Thus, this court recommends that plaintiff's motion for summary judgment be granted so that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) to further develop the record in accordance with this Report and Recommendation.

## R E C O M M E N D A T I O N

AND NOW, this 20th day of December, 2005, upon consideration of plaintiff's motion for summary judgment and defendant's motion for summary judgment, it is respectfully recommended that plaintiff's motion for summary judgment be GRANTED, defendant's motion for summary judgment be DENIED, and judgment be entered in favor of plaintiff.[6]  This court

---

[6]    Since the court recommends a remand pursuant to sentence four of 42 U.S.C. § 405(g), the court recommends that the motion for summary judgment be granted and judgment be entered in plaintiff's favor.  See Shalala v. Schaefer, 509 U.S. 292, 296-97 (1993) (Sentence four of 42 U.S.C. § 405(g) authorizes a district court to enter a judgment "with or without" a remand order, not a remand order "with or without" a judgment.)  See also Kadelski v. Sullivan,

further recommends this case be REMANDED for further proceedings consistent with this

Report and Recommendation.


                                                  BY THE COURT:


                                                  _____
                                                  THOMAS J. RUETER
                                                  United States Magistrate Judge

---

30 F.3d 399, 401 (3d Cir. 1994).